727 So.2d 1215 (1999)
STATE of Louisiana
v.
Albert T. HILLS.
No. 98-KA-0507.
Court of Appeal of Louisiana, Fourth Circuit.
January 20, 1999.
Harry F. Connick, District Attorney of Orleans Parish, John Jerry Glas, Assistant District Attorney for Orleans Parish, New Orleans, Louisiana, Counsel for State Of Louisiana/Appellee.
Yvonne Chalker, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY III, Judge Pro Tempore JAMES C. GULOTTA.
JAMES C. GULOTTA, Judge Pro Tem.
Defendant was convicted of attempted second degree murder, La. R.S. 14:27(30.1). The trial judge sentenced him as a second *1216 offender to one-hundred years at hard labor without benefit of parole, probation, or suspension of sentence.
On appeal, defendant argues that his sentence is excessive. Defendant also filed a pro se brief arguing that the trial judge failed to follow the Louisiana Sentencing Guidelines and failed to sentence him prior to the multiple bill sentence. We hold that the sentence is not excessive. Accordingly, we affirm.

Facts
Brandy Jackson testified that she purchased cocaine from the defendant. She said that at about 5:00 a.m. on June 8, 1996, the defendant went to her house, knocked on the door, and asked her for twenty-five dollars that she owed as interest on her cocaine purchases. Jackson said that she had paid the defendant and had given the twenty-five dollars in interest to his mother. Jackson testified that she then went to the home of defendant's mother, who accompanied Jackson back to Jackson's residence. The defendant was gone, and his mother left after a few minutes.
Jackson testified that the defendant and two other men arrived at the house shortly thereafter. One of the men went to Jackson's porch and called her. She did not answer. The defendant then went to her door, screamed for her, then kicked the screen door.
Jackson said that she and her fiancé, Harold Edwards, closed the inside wood door. Edwards took refuge in the bathroom, and Jackson went to the bedroom door. She testified that the defendant kicked out two inset sections of the door. She said he put the rifle to his face, aimed at her, looked her "dead in (her) eyes and shot (her)." Jackson estimated that Hills fired twelve shots, striking her in the chin, neck, chest, side, and arm.
Jackson was hospitalized for two months. Her elbow was shattered and she has needed continued treatment to rebuild the arm. The doctors could not remove the bullet from her chest.
Jackson testified without doubt that the defendant is the person who shot her.
Harold Edwards testified that he lived with Jackson. On June 8, 1996 the defendant went to the house looking for Jackson, who was not there. Edwards said the defendant claimed that Jackson owed him money, noticed fifteen dollars on the coffee table, and took it, saying, "Oh, well, this will help out on the bill." Edwards testified that Jackson returned a short time later with the defendant's mother. After Hills' mother left, the defendant returned and attempted to break through the screen door. Edwards corroborated Jackson's testimony that they closed and locked the wood door and that Edwards went into the bathroom. He testified that he then heard five or six shots from the front of the house. He went into the bedroom and found Jackson on the floor bleeding.
Edwards testified that the defendant came through the front door, but Edwards did not see who shot Jackson.
Officer Eric Danner testified that he arrived on the scene at about 7:00 a.m. the day of the shooting. The officer found Jackson on the bedroom floor with multiple bullet wounds to her chin, elbow, chest, stomach, and back. He said that Jackson told him that the person who shot her was named Alvin.
Officer Thomas Kennedy also investigated the shooting. He testified that he collected from the scene seven spent cartridge cases, one shirt, and one spent bullet. The officer took pictures of the scene, which were admitted into evidence and shown to the jury. He testified that the front door had "extensive damage," bullet holes were in the bedroom and kitchen walls, and seven spent cartridge cases were recovered from the front yard. Officer Kennedy said that Jackson had been taken to the hospital before he arrived.
Detective Ralph Caesar showed a photographic line-up to Jackson in the hospital on July 15, 1996. He testified that she identified the defendant as the perpetrator. The detective also showed a photographic line-up to Edwards, who also selected the defendant's photograph as the perpetrator.
Jacqueline Hills, the defendant's mother, testified that Jackson went to her house and awoke her early on June 8. She said that *1217 Jackson had a pistol, and Hills went with her to Jackson's house to look for the defendant. He was not there, so Mrs. Hills left to find him. When returning home, she noticed police cars in front of Jackson's house. She testified that the screen door was torn open. Mrs. Hills learned that Jackson had been shot, and someone told her that her son had done it. She did not see the defendant until the next evening. Mrs. Hills testified that she had never known the defendant to have a rifle.
The defendant, twenty years of age, testified that he went to Jackson's house because she owed him money for drugs. He said that she claimed to have paid his mother, that she pulled a gun on him, and that he left. He testified that he later returned to Jackson's house, and she shot at him several times. He ran. The defendant denied having a rifle but admitted prior convictions for possession of crack cocaine, possession of marijuana, and simple assault of a police officer. He admitted that he had been in the drug trade.

Excessive Sentence
The defendant argues that the one-hundred year sentence is excessive. He claims that his age, twenty years old, and the lack of a violent criminal history are mitigating factors that the trial court should have considered.
A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276, 1280 (La. 1993); State v. Robertson, 97-1040, p. 2 (La. App. 4 Cir. 11/19/97), 702 So.2d 1207, 1208. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Baxley, 94-2982, p. 9 (La.5/22/95), 656 So.2d 973, 979. A maximum sentence under the habitual offender law is reserved for the worst offender. State v. Telsee, 425 So.2d 1251, 1253 (La. 1983).
The sentencing judge stated:
The trial testimony that was presented to the jury indicates to me, Mr. Hill [sic], that you were engaged in an action of urban warfare. He turned the neighborhood in which this shooting occurred into a war zone. I find that you were armed with a high powered rifle that was capable and did ... penetrate every single wall in this victim's little shotgun house. In fact, one round not only penetrated every wall of the house but it exited the rear wall of the home. It had sufficient velocity after having penetrated each and every wall of her little house to exit through the rear wall and end up in the back yard. This type of high powered ammunition that you were using that day is the type of ammunition that must have been designed for military use. I find that you had no other intent in this case but to kill the victim. I find that it was only through a miracle that Ms. Jackson survived the five gunshot wounds that you inflicted upon her with this high powered military style assault weapon. I find that you had no regard, whatsoever, for the safety of the victim, the safety of the witness, who survived this onslaught of gunfire and was able to come to court and testify. I find that you had no regard, whatsoever, for the safety of the public when you opened fire on Ms. Jackson as if you were involved in a military style attack on an enemy. This helpless woman had to undergo several surgeries with more surgeries scheduled for the future. She suffered disfiguring injuries including a grotesque reconstruction of her elbow. You caused at the time, and this victim continues to suffer, excruciating pain. She suffered serious and protracted injuries. She will continue to suffer pain as a result of these injuries for an extended period of time.
Mr. Hills, you inflicted pitiless suffering on Ms. Jackson and you had total disregard for her life and the life of others. According to the trial testimony, you did this because you felt that Ms. Jackson owed you ten dollars as interest on crack cocaine. You are a self admitted cocaine dealer. You have a felony conviction for possession of cocaine. I find that you have possessed and you will possess in the future, *1218 an unusual risk ... to the safety of the people of the City of New Orleans. I find that you have a criminal history. I find that this was a very, very dangerous action that you undertook, this military style assassination of this poor woman. I find that the harm that you did to this victim was great and the reason that you inflicted this harm upon her was rather trivial. I find the potential for your rehabilitation to be slight and I find that you pose a danger to the public. I find that there is an undue risk that during the period of a suspended sentence or probation, that you will commit other crimes. This is your second conviction. I find that you are in need of correctional treatment or a custodial environment that can be provided most effectively by your commitment to the Louisiana State Penitentiary.
The trial judge considered the gravity of the crime and the defendant's deliberate cruelty to the victim. Though the defendant complains that he is only twenty years of age, the trial judge considered his experience in the drug trade and his prior conviction. In addition to the conviction for possession of cocaine that formed the basis of the multiple offender adjudication, the defendant admitted that he was convicted of possession of marijuana. The defendant's criminal history also includes a violent offense. He testified that he was convicted of simple assault of a police officer six months prior to the offense against Ms. Jackson.
Considering the defendant's criminal history and the heinous facts of this case, we conclude that the sentencing judge properly tailored the punishment to fit this particular defendant and this particular crime. The judge deemed the defendant a danger to society, and the sentence accomplishes the legitimate purpose of protecting society from further action by the defendant.
Louisiana courts have affirmed one-hundred year sentences for attempted second degree murder for second offenders. State v. Hall, 606 So.2d 972 (La.App. 3d Cir.1992), writ den. 93-0051 (La.11/11/94), 644 So.2d 385; State v. Williams, 435 So.2d 1047 (La. App. 5th Cir.), writ den. 439 So.2d 1074 (La.1983). In Hall, the defendant had an extensive violent history. In both cases, the defendants' disregard for the safety of the victim and others led the sentencing judge to conclude that the sentences did not constitute cruel and unusual punishment.

Sentencing Guidelines
The defendant argues pro se that the sentencing judge failed to consider the Louisiana Sentencing Guidelines. That argument has no merit.
The Louisiana Sentencing Guidelines were repealed by Acts 1995, No. 942, §3, effective August 15, 1995 and are no longer in effect. The sentencing judge articulated the basis for the sentence as required by La.C.Cr.P. art. 894.1

Sentence as Multiple Offender
The defendant complains that the trial judge did not sentence him under La. C.Cr.P. art. 871 before imposing a sentence under the Habitual Offender Law, La. R.S. 15:529.1.
Under the Habitual Offender Law, the trial judge may impose only one sentence for a single crime. La. R.S. 15:529.1(D)(3) provides:
When the judge finds that he [the defendant] has been convicted of a prior felony or felonies ... or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted or adjudicated, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated.... [Emphasis added.]
Section 529.1 does not mandate that a sentence be imposed before the sentence on the multiple bill. The trial judge did not err by sentencing the defendant only once as an habitual offender. This assignment is without merit.
Accordingly, we affirm the defendant's conviction and sentence.
AFFIRMED.