775 So.2d 454 (2000)
STATE of Louisiana
v.
Wilfred GUY.
No. 99-KA-1893.
Court of Appeal of Louisiana, Fourth Circuit.
July 19, 2000.
*455 Harry F. Connick, District Attorney for Orleans Parish, Cate L. Bartholomew, Assistant District Attorney for Orleans Parish, New Orleans, LA, Counsel for Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, Metairie, LA, Counsel for Defendant/Appellant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge DENNIS R. BAGNERIS, Sr., and Judge MICHAEL E. KIRBY).
BAGNERIS, Judge.

STATEMENT OF THE CASE
Defendant Wilfred Guy was charged by bill of information on April 21, 1998 with *456 attempted second degree murder, a violation of La. R.S. 14:27 and 14.30.1. Defendant pleaded not guilty at his May 13, 1998 arraignment. A twelve-person jury found defendant guilty as charged on March 3, 1999, following trial. On March 16, 1999, the trial court sentenced defendant to serve twenty-five years at hard labor without benefit of probation, parole or suspension of sentence, with credit for time served. On April 1, 1999, the trial court adjudicated defendant a second-felony habitual offender, vacated his original sentence, and resentenced defendant to twenty-five years at hard labor, without benefit of probation, parole or suspension of sentence. On July 14, 1999 the trial court denied defendant's motions to quash and to reconsider sentence, and granted defendant's motion for appeal.

FACTS
New Orleans Police Detective Cathy Carter answered a call regarding a shooting that occurred in the 3000 block of First Street on March 29, 1997. Upon arriving on the scene, Johnny Andrew, the victim, was unable to speak, but his wife informed the detective that a tenant had chased Andrew around a car and shot him. City of New Orleans Emergency Medical Technician Miles Watts responded to the shooting on March 29, 1997, and found Andrew suffering from three gunshot wounds to his person.
New Orleans Police Detective Michael Roussel testified that Andrew suffered multiple gunshot wounds and appeared to be in lot of pain. He testified that Andrew's wife and a neighbor both identified defendant as the person that shot the victim. Detective Roussel obtained an arrest warrant for defendant based upon the statements given by the witnesses.
Mr. Philip Donald testified that on March 29, 1997, he was sitting on the corner of First and Johnson Streets, and observed Andrew, several houses away working on his truck. During the two hours Mr. Donald was on the corner, he saw defendant, whom he knew by name, but not personally, "swapping words" with Andrew about a "bill." Andrew told defendant to go and see his wife, at which time defendant got up and walked away. Defendant called out to Andrew, referring to him as a "bitch." Andrew replied, "and you." At that point defendant pulled a silver pistol from underneath his shirt and fired shots in the direction of Andrew. He fired at Andrew over his truck. Andrew ran, and defendant followed, shooting at him. Andrew attempted to make it inside to his residence, but fell at his door, into his flowerbed. At that point defendant stood over Andrew and shot him. Mr. Donald said he went into his residence to retrieve a handgun, but said that when he returned, defendant got into his truck and left. Andrew was bleeding on his porch of his house. Mr. Donald said he heard five shots fired before Andrew fell, and heard more than one shot afterward. He said the two men were loudly arguing.
Cassandra Andrews, Andrew's wife, testified that she knew defendant, and that defendant had been renting a residence from her. As of the day of the shooting, she had served defendant, who lived in the residence with a female companion and his two daughters, an eviction notice. She said she had spoken to defendant about the situation and said he had not expressed any anger. She was inside her home when she saw defendant walk by, then heard Andrew say "talk to my wife." She went outside just in time to see defendant shoot her husband. Mrs. Andrews stated that her husband had been shot five times, and stayed in the hospital for approximately six weeks.
Mrs. Andrews admitted on cross-examination that her husband was walking behind defendant before defendant started shooting. She admitted that her husband owned a gun, but said he kept it in the bedroom and did not have it outside with him on the day of the shooting.
Andrews testified that defendant first shot him in his hand then continued to *457 shoot at him as he ran. Andrew said he fell down onto his porch when hit by the second bullet. Defendant kept on shooting as Andrew attempted to get inside, and Andrew said he was shot again as he hung onto his screen door. Andrew said he begged defendant not to shoot him or kill him. He said he did not attempt to strike defendant, nor did he give defendant any reason to believe he would harm him. He said he was lying on the seat of his truck talking to defendant, and got out and stood up. Defendant was saying that Andrew and his wife did not know who they were "fucking with," and Andrew told defendant that his wife wanted to talk to him. Defendant replied, "fuck you," and Andrew said "man, same to you." Defendant pulled out the gun at that point. Defendant said he did not own a gun.
Detective Roussel, recalled by the defense, reiterated that Andrew had been unable to talk, and that he got the defendant's name from Mrs. Andrews and another witness. Detective Roussel was shown the application he completed for an arrest warrant, in which he attested that Andrew and two witnesses had positively identified the perpetrator. Detective Roussel admitted that this was incorrect insofar as Andrew having identified the perpetrator.
Jacqueline LeBan, defendant's sister, testified that her sister had died on March 29, 1997. She said defendant was at the hospital that morning. She later saw defendant at her mother's home in Gentilly. She could not recall precisely what time this was, but said it was after 11:00 a.m. She said defendant was still there around 1:00 p.m., but he was not there after 3:00 p.m., when police came looking for him. She was not sure whether defendant was at their mother's home at 2:00 p.m.
Gregory Guy, defendant's brother, testified that after he and defendant left the hospital on March 29, 1997, they went to his mother's residence. They arrived there at approximately 12:30 p.m. He could only say that the last time he noticed his brother there, it might have been approximately 1:00 p.m.

ERRORS PATENT
A review of the record reveals an error patent. La.C.Cr.P. art. 873 requires a twenty-hour delay between the denial of a motion for new trial and sentencing. La.C.Cr.P. art. 853 requires a motion for new trial to be filed and disposed of before sentence. A minute entry for the date of the original sentencing reflects that defendant filed an oral motion for a new trial on that date, which was denied that same date, with no evidence that defendant waived the twenty-four hour delay. However, the sequence indicates that the motion was filed after sentencing. If the motion was not filed until after sentencing, it cannot be said that the trial court erred with respect to any delay or with respect to disposition of the motion after sentencing. Moreover, where the original sentence is vacated and the defendant is resentenced as a habitual offender, the defendant has not been prejudiced by the trial court's failure to observe the twenty-hour delay, and he is not entitled to any relief as a result of such error. State v. Bentley, 97-1552, p. 3 (La.App. 4 Cir. 10/21/98), 728 So.2d 405, 408, writ denied, 98-3213 (La.5/7/99), 741 So.2d 27.

DISCUSSION
The defendant argues that the trial court erred in adjudicating him a third-felony habitual offender, as the alleged predicate conviction was a guilty plea entered pursuant to La. R.S. 40:983, repealed by Acts 1995, No. 1251, § 2 which, at the time of defendant's August 31, 1993 guilty plea provided:
A. Whenever any person who has not previously been convicted of any offense under this part pleads guilty to or is convicted of having violated R.S. 40:966C, R.S. 40:967C, R.S. 40:968C, R.S. 40:969C, R.S. 40:970C of this Part, and when it appears that the best interests of the public and of the defendant *458 will be served, the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as may be required. Among such conditions the court shall order that the defendant perform not less than one hundred hours of court-approved community service that may include manual labor.
B. Upon the defendant's violation of any of the terms or conditions of his probation, the court may enter an adjudication of guilt and impose sentence upon such person.
C. Upon fulfillment of the terms and conditions of probation imposed in accordance with this section, the court shall discharge such person and dismiss the proceedings against him.
D. Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualification or disabilities imposed by law upon conviction of a crime, including the additional penalties imposed for a second or subsequent convictions under R.S. 40:982.
E. Discharge and dismissal under this section may occur only once with respect to any person.
The State claims that defendant is precluded from raising this issue because he did specifically object on La. R.S. 40:983 grounds. However, defendant explicitly stated to court at his habitual offender hearing that he was "filing against" the habitual offender bill, but said he could not say which "title or article" he was availing himself of. Under these circumstances it must be considered that defendant has preserved his right to object to what essentially is the sufficiency of the State's evidence presented on the habitual offender information. This is not a collateral attack on the prior conviction as contemplated by La. R.S. 15:529.1(D)(1)(b), requiring a specific written response.
Defendant pleaded guilty to possession of cocaine on August 31, 1993. The waiver of constitutional rights and plea of guilty form has handwritten next to the printed words "Plea of Guilty," "under 40:983." La. R.S. 40:983 is not mentioned in the minute entry or the docket master entry the State attached to the plea of guilty form.
In State v. Christian, 618 So.2d 559 (La.App. 4 Cir.1993), the defendant appealed his habitual offender adjudication. On appeal, the State conceded that the defendant should not have been adjudicated a habitual offender, as the predicate offense had been a guilty plea entered pursuant to La. R.S. 40:983. This court set forth the substance of La. R.S. 40:983, emphasizing that a discharge and dismissal under the statute shall be without court adjudication of guilt and "shall not be deemed a conviction." This court noted that the State agreed that a plea of guilty pursuant to La. R.S. 40:983 cannot be considered an adjudication of guilt, and thus cannot be used as an underlying offense to enhance a sentence. This court cited State v. Randall, 464 So.2d 971 (La.App. 4 Cir. 1985), and concluded that the habitual offender adjudication should be vacated. In Randall, this court held that a plea of guilty to possession of heroin entered pursuant to La. R.S. 40:983 could not be considered an adjudication of guilt, and could not, therefore, serve as the basis of a charge of being a convicted felon in possession of a firearm. See also State v. Rowel, 97-1550 (La.App. 4 Cir. 3/31/99), 732 So.2d 123 (following Randall  plea of guilty to possession of cocaine entered pursuant to La. R.S. 40:983 not an adjudication of guilt for purposes of charging defendant as a convicted felon in possession of a firearm).
The State submits that because the only evidence of a plea pursuant to La. R.S. 40:983 is the notation on the waiver of rights/guilty plea form, this matter should be relegated to application for post-conviction relief. The State's argument, in other *459 words, is that the evidence is insufficient to establish that defendant's plea was pursuant to La. R.S. 40:983, and that possibly an evidentiary hearing is necessary to resolve the matter.[1]
Defendant received a sentence of two years at hard labor for the 1993 guilty plea, which was suspended, and he was placed on two years active probation. The docket master does not indicate either that defendant fulfilled the terms and conditions of his probation, or that the trial court discharged him and dismissed the prosecution against him pursuant to La. 40:983(D). On the other hand, the docket master does not reflect that defendant violated any of the terms and conditions of his probation, or that the trial court consequently "entered an adjudication of guilt and imposed sentence" upon him pursuant to La. R.S. 40:983(B). It is also noted that the trial court did not order defendant to perform at least one hundred hours of community service as mandated by La. R.S. 40:983(A).
In Randall, the defendant pleaded guilty in August 1982 to possession of heroin, was given a suspended ten-year sentence, and placed on probation for five years. He was arrested in November 1983 and charged with being a convicted felon in possession of a firearm. The trial court quashed the indictment, and this court affirmed, stating:
Because the defendant's plea to the charge of simple possession of heroin was made pursuant to the provisions of LSA-R.S. 40:983, such plea cannot be considered an adjudication of guilt and cannot, therefore, serve as the basis for the convicted felon in possession of weapon charge.
Thus, in Randall it was the plea of guilty pursuant to La. R.S. 40:983 which precluded its use as a "conviction" for purposes of charging the defendant as a convicted felon in possession of a firearm. As in the instant case, there was no indication that the defendant in Randall had fulfilled the terms and conditions of his probation, and had been discharged by the court and had the proceedings against him dismissed, as contemplated by La. R.S. 40:983(C) & (D). Admittedly the defendant in Randall was in all probability still on probation when charged with the firearm offense, while in the instant case defendant's two-year probationary period beginning in August 1993 had clearly expired at the time he was charged as a habitual offender. However, this court's holding in Randall was based on the supposition that a plea of guilty itself under La. R.S. 40:983 is not an adjudication of guilt and, therefore, cannot serve as a predicate conviction. Also, in Christian, while this court stressed the language in La. R.S. 40:983 that a discharge and dismissal shall not be deemed a conviction, there was no indication that the defendant in Christian had fulfilled the terms of his probation and been discharged and dismissed. Moreover, according to this court, the State conceded in Christian the proposition that "a plea of guilty pursuant to R.S. 40:983 cannot be considered an adjudication of guilt and thus cannot be used as an underlying offense in an enhancement proceeding." 618 So.2d at 560.
It is axiomatic that to prove a defendant is a second-felony habitual offender under La. R.S. 15:529.1, the State must prove that the defendant has been previously convicted of a felony offense. The State failed to its initial burden of proving that defendant was previously convicted of a felony, as the 1993 guilty plea form indicates that the plea was pursuant to La. R.S. 40:983, which means that the plea was not an adjudication of guilt and cannot serve as a predicate conviction. Therefore, the trial court erred in adjudicating defendant a habitual offender. The multiple bill adjudication and sentence are vacated, *460 and the case remanded for resentencing.

PRO SE ASSIGNMENTS OF ERROR NOS. 1 & 4
In the defendant's pro se brief he claims that he was denied his statutory right to a speedy trial pursuant to La. C.Cr.P. art. 701, as well as his constitutional right to a speedy trial.
Defendant filed a motion to quash after he was convicted based upon a supposed violation of his statutory right to speedy trial under La.C.Cr.P. art. 701, which the trial court denied. At the hearing on this motion, defendant maintained that he had been indicted for this crime, which occurred on March 29, 1997, but was subsequently released pursuant to La. C.Cr.P. art. 701. The record does not otherwise reflect these facts. Defendant apparently served a short sentence in federal prison after the crime in the instant case had been committed. He was indicted or re-indicted while he was in federal custody, on April 21, 1998, less than thirteen months after the crime.[2] A statutory speedy trial claim under La. C.Cr.P. art. 701 is a pretrial claim that is rendered moot upon conviction. State v. Kelly, 92-2446, p. 18 (La.App. 4 Cir. 7/8/94), 639 So.2d 888, 896, writ denied, 94-2087 (La.1/6/95), 648 So.2d 921. The remedy for a speedy trial violation under La. C.Cr.P. art. 701 is limited to release from incarceration without bail or release of bail obligation for one not incarcerated; a motion to quash is not provided for. State v. Barnes, 94-1411, pp. 2-3 (La. App. 4 Cir. 12/28/94), 648 So.2d 480, 482. Therefore, the trial court properly denied defendant's motion to quash insofar as it was based upon a supposed violation of La. C.Cr.P. art. 701.
In addition to the limitations provided for by La. C.Cr.P. art. 701, La. C.Cr.P. art. 578(2) provides for a two-year time limitation within which trial of a defendant accused of a non-capital felony must be commenced. The bill of information in the instant case was filed on April 21, 1998. Defendant's trial was timely commenced less than one year later, on March 1, 1999. Thus, even assuming defendant's motion to quash had been based on La. C.Cr.P. art. 578(2), it was properly denied by the trial court.
Besides these statutory provisions, a defendant has the right to a speedy trial under the Sixth Amendment to the United States Constitution and La. Const. art. 1, § 16. State v. Sullivan, 97-1037, p. 16 (La.App. 4 Cir. 2/24/99), 729 So.2d 1101, 1109, writ denied, 99-0797 (La.9/17/99), 747 So.2d 1093. In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court set out the following four factors to determine whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and, (4) the prejudice to the defendant. The court held that the length of the delay was the triggering mechanism; and, until the delay was presumptively prejudicial, there was no need to inquire into the other factors. The court further stated that the length of the delay that would provoke such an inquiry was dependent upon the peculiar circumstances of the case. The court noted that the reason for the delay was closely related to the length of the delay and that different weights should be given to different reasons. As to the defendant's assertion of his right to a speedy trial, the court stated that the assertion of the right was entitled to strong evidentiary weight in determining whether the defendant was deprived of his right. Regarding the final factor, the court stated that prejudice was to be assessed in light of the interests of the defendant, which the speedy trial right *461 was designed to protect. The court identified those interests as preventing oppressive pretrial incarceration, minimizing the anxiety and concern of the defendant, and limiting the possibility that the defense would be impaired.
In the instant case, defendant was indicted or re-indicted while he was in federal prison, on April 21, 1998. Due to his incarceration in federal prison, defendant did not appear for arraignment in state court until May 13, 1998. A minute entry reflects that defendant was still in federal custody as late as May 11, 1998, and presumably remained in federal custody until transferred to state custody between then and his May 13 state court arraignment. Defendant's trial commenced less than ten months after his arraignment. Accordingly, the ten-month delay between defendant's entrance into state custody and his trial was not presumptively prejudicial, and no further inquiry is warranted. Defendant's constitutional rights to a speedy trial were not violated. The trial court properly denied it assuming defendant's motion to quash was based on his constitutional rights to a speedy trial.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant claims his sentence was excessive. Although we have vacated the defendant's sentence as a habitual offender and remanded the case for resentencing, this assignment of error will be addressed, as the original sentence was the same as the sentence imposed on defendant as a habitual offender-twenty-five years at hard labor without benefit of probation, parole or suspension of sentence.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2984 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Webster, 98-0807, p. 3 (La.App. 4 Cir. 11/10/99), 746 So.2d 799, 801. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2984 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La. C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense *462 so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762; State v. Bonicard, 98-0665, p. 3 (La.App. 4 Cir. 8/4/99), 752 So.2d 184, 185, writ denied, 99-2632 (La.3/17/00), 756 So.2d 324.
In State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." State v. Wimberly, 414 So.2d 666, 672 (La. 1982).
Id.
Defendant claims the trial court did not consider, as he claims was required by La. C.Cr.P. art. 894.1, that at the time of sentencing he was fifty-three years old or that he was sole support of two daughters, ages thirteen and fourteen years, and that his incarceration would entail an excessive hardship on his dependents. Defendant concedes the trial court stated for the record that it had reviewed the "guidelines." The court did state this for the record in originally sentencing defendant, and further stated that it had also reviewed "those facts we take into consideration [when imposing sentence]."
Defendant was convicted of attempted murder, a violation of La. R.S. 14:27 and La. R.S. 14:30.1, and the sentencing range was from ten to fifty years at hard labor, without benefit of parole, probation or suspension of sentence. As previously stated, the original sentence was twenty-five years at hard labor.
The record contains Andrew's medical records. Andrew was sixty-years old at the time he was shot. The shooting was triggered when defendant said, "fuck you" to Andrew, and Andrew replied "man, same to you." Defendant was the instigator of the encounter. He shot Andrew once in the hand. Andrew ran, and defendant chased him, continuing to shoot at him. Bullet holes were found in two vehicles at the scene, including Andrew's. Andrew said he fell down onto his porch when hit by the second bullet. Defendant kept on shooting as Andrew attempted to get inside, and was shot again as he hung onto his screen door. Andrew said he begged defendant not to shoot him or kill him. Andrew said he was in Charity Hospital *463 for approximately one month, and as a result of the shooting has to wear a brace because his right leg is partially paralyzed or otherwise functionally impaired. Andrew also said he has bladder-control problems, and was taking medication to help control his bladder, as well as to control pain.
In State v. Talbert, 543 So.2d 585 (La. App. 4 Cir.1989), this court affirmed a twenty-five year sentence imposed on a first offender convicted of attempted second degree murder where the armed defendant waited for Andrew in an area crowded with Mardi Gras participants, walked to within three to five feet of him, shot him in the shoulder, then chased him and fired two more shots at him.
Considering the egregious nature of this crime, and even considering that if defendant serves his full sentence he will be approximately seventy-seven years old before he gets out of prison, it cannot be said the sentence of one-half of the possible maximum sentence makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and or is grossly out of proportion to the severity of the crime. Considering the harm done to Andrew and, consequently, society, it cannot be said that the sentence shocks the sense of justice.
There is no merit to the claim that the sentence is excessive.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant claims the trial court erred in not vacating his original sentence before imposing his sentence as a habitual offender. The transcript of the original sentencing shows that the original sentence was twenty-five years at hard labor-not twenty years as asserted by defendant. The transcript of the habitual hearing and sentencing shows that the trial court vacated the original sentence before imposing the habitual offender sentence. Furthermore, this issue is moot, since the habitual offender adjudication and sentence have been vacated, and the case remanded for resentencing.
We pretermit discussion of this assignment or error in light of the court's disposition of the issue presented with defendant's argument that the trial court erred in adjudicating him a second felony habitual offender.

CONCLUSION
Accordingly, the defendant's conviction be affirmed. The defendant's adjudication and sentence as a habitual offender are vacated, and the case remanded for resentencing.
CONVICTION AFFIRMED, HABITUAL ADJUDICATION AND SENTENCE VACATED, AND REMANDED FOR RE-SENTENCING.
NOTES
[1] It does not appear that defendant could even raise this issue in an application for post-conviction relief. See State ex rel. Melinie v. State, 93-1380 (La.1/12/96), 665 So.2d 1172 (grounds for post-conviction relief set out in La. C.Cr.P. art. 930.3 exclusive).
[2] Pursuant to La. C.Cr.P. art. 572(1), the State had six years from the date of the offense to institute prosecution of defendant.