11 LOVE, Judge.

STATEMENT OF THE CASE:

On October 23, 1997, the defendant was charged by bill of information with two counts of armed robbery and one count of attempted second degree murder. La. R.S 14:64; La. R.S. 14:27(30.1). On three separate occasions, he was found competent to proceed to trial. (April 21, 1998; October 19, 1999; November 4, 1999). On November 4, 1999, a twelve member jury found the defendant guilty as charged on two counts of armed robbery and guilty of the lesser included offense of attempted manslaughter. On November 18, 1999, he was sentenced to twenty years at hard labor without benefit of parole, probation, or suspension of sentence on each of the armed robbery convictions and ten years at hard labor without benefit of parole, probation, or suspension of sentence on the count of attempted manslaughter. The court ordered that the sentences be served concurrently.

*1133
ERRORS PATENT:

The defendant was sentenced without benefit of parole, probation, or suspension of sentence on the attempted manslaughter. The denial of those benefits under the manslaughter statute is available only where the victim was killed as a result of a battery and was under ten years old.
| ¡¿Since those facts are not present in this case, then the denial of those benefits is deleted.

FACTS:

Wayne Squire, a White Fleet cabdriver, said he picked up the defendant on August 21, 1997, in the 2700 block of Second Street. The defendant instructed him to drive to 2501 Orleans Avenue. The defendant asked Squire if he was interested in some jewelry and then showed him some women’s jewelry. Then, the defendant told him to stop on Tonti Street. He put a gun to Squire’s head and demanded his money and jewelry. Squire heard a click, and then the defendant got out of the car. Then, Squire opened the door of the cab, armed with a gun he carried for protection, and found himself facing the defendant. The men exchanged fire and then the defendant ran away.
Officers in the area responded to the sound of gunfire. The defendant was found bleeding, under a house in the neighborhood. His gun, the money and the jewelry were recovered. Later, Squire identified the defendant.
Darlene Nash testified that earlier on the night of August 21, 1997, she was leaving the circus with her two young children. The defendant approached her and asked her how to catch the Freret street bus. She told him, then went into a nearby hotel so that one of her children could use the bathroom. When she came out, she saw the defendant standing on the wrong corner. She corrected him and then took the bus home. As she was getting off near the C.J. Peete Housing Project, the defendant came up behind her, pulled a gun, and demanded her money with the threat that he would kill her children. Then, he pulled her into the project and asked if she had anything of value. She told him that she had jewelry and then gave him her jewelry and money. He kissed her and told her that if she had been [¡¡white, he would have raped and killed her. Her husband heard the news of the cab driver robbery on the television news report that evening and thought that crime might have been committed by the same man.
Officer Gary Dupart compiled a photographic lineup, containing a picture of the defendant, who had been arrested in the cab robbery. Nash identified him and some of the recovered jewelry as her own.

ASSIGNMENT OF ERROR NUMBER ONE

The defendant argues the trial court erred in finding him competent to proceed to trial.
At a hearing April 21,1999, Dr. Kenneth Ritter said he had examined the defendant that morning, and found the defendant “competent to proceed.” He said he had examined the defendant on previous occasions in July 1984 and in February 1985 and thought that he might be malingering. Dr. Ritter and Dr. Cox recommended that the defendant be sent to Feliciana Forensic Facility to assure that the determination that he was malingering was correct. After several months, the doctor found no mental illness. He said the defendant had a borderline IQ. The parties stipulated that Dr. Rafael Salcedo would give the same testimony.
On October 19, 1999, Dr. Salcedo said that he had re-examined the defendant and stood by his original diagnosis. Dr. Richard Richeaux said he agreed with Dr. Sal-cedo.
On November 4, 1999, prior to the start of trial, Dr. Salcedo specifically testified as to the defendant’s ability to tell the difference between right and wrong at the time of the commission of the offense. He specifically said, “[A]s I’ve testified earlier with regard to the issue of competency to *1134 proceed, I fail to find any evidence of a mental illness, of mental disease or defect which would compromise 14this individual’s ability to distinguish right from wrong at the time of the alleged offense.” The parties stipulated that Richeaux would agree.
In State v. Silva, 96-0407 (La.App. 4 Cir. 9/3/97), 699 So.2d 487, 490-491, this court stated:
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. LSA C.Cr.P. art. 641. The two-fold test of capacity to stand trial under this article is whether the accused 1) understands the consequences of the proceedings, and 2) has the ability to assist in his defense by consultation with counsel. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); State v. Bennett, 345 So.2d 1129 (La.1977). Mental retardation or sub-normal intelligence is not in itself proof of incapacity. State v. Lawrence, 368 So.2d 699 (La.1979). The decision as to a defendant’s capacity to proceed should not turn solely on whether he suffers from mental disease or defect, but must be grounded in the nature of the charge, the complexity of the case and the seriousness of the decisions he faces. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
Because Louisiana law presumes a person sane and responsible for his actions, the defendant bears the burden of proving he is incapable of standing trial because of mental disease or defect. State v. Bennett, supra.
In Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), the United State Supreme Court held that the states may not require defendants to prove their capacity to proceed by a standard greater than a preponderance of evidence.
Here, the defendant argues the trial court erred by confusing the issue of whether the defendant was competent to proceed to trial with whether the defendant knew the difference between right and wrong when he committed the offenses. This is incorrect. All of the doctors who testified concluded that the defendant was not suffering from any mental illness and that he was competent to stand trial. In addition, one-of the physicians, Dr. Salcedo, concluded that the defendant was not suffering from any mental illness that would have prohibited | Bhim from distinguishing between right and wrong. Therefore, the trial court did not confuse the issue of whether the defendant was competent to stand trial with whether he was able to distinguish between right and wrong. Furthermore, the defendant put forth absolutely no evidence that he was incompetent and therefore did not carry his burden.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

The defendant argues excessive sentence.'
La. Const, art. I, § 20 explicitly prohibits excessive sentences. State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2984 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of *1135 proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Webster, 98-0807, p. 3 (La.App. 4 Cir. 12/20/00), 775 So.2d 661. A sentence is [(¡grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2984 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1, and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. If adequate compliance with La.C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La.App. 4 Cir. 9/8/99), 743 So.2d 757, 762.
However, in State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.CrJP. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court stated:
|7On appellate review of sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’” State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentenc-ing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.” State v. Wimberly, 414 So.2d 666, 672 (La.1982).

Id.

Here, the defendant argues the trial court failed to comply with article 894.1. Indeed, the trial court made absolutely no reference to the article. However, the facts of the case establish that the defendant followed a woman and her two small children home, pulled them into a housing project, took the mother’s money and jewelry, threatened to kill the children, and mentioned raping and killing the mother in front of her small children. The mother testified that the older child later, without *1136 provocation, showed her a drawing he had done of the incident, suggesting that the incident was indelibly written in his memory.
The defendant stopped a cab driver who was willingly driving him to a destination and pointed a gun at his head. The driver heard the gun click although it did not go off. The defendant led officers on a chase and hid underneath a house, while armed, trying to evade capture.
These facts establish that the defendant is a violent person. Furthermore, the State pointed out at the sentencing hearing that if it filed a multiple bill against the | ¡¡defendant, he would be facing life imprisonment. The defendant was in fact sentenced to only twenty years on two counts of armed robbery, where- he could have been sentenced to ninety-nine years at hard labor on each count. Because the crimes did not arise out of the same act or transaction, the sentences could have been ordered to be served consecutively, but were ordered served concurrently. The defendant was sentenced to only ten years on.the attempted manslaughter where he could have been sentenced to twenty years. The sentences on their face are not excessive.
This assignment is without merit.

DECREE

The armed robbery convictions and sentences are affirmed. The attempted manslaughter conviction is affirmed and the sentence amended to delete the denial of benefits.

AMENDED AND AFFIRMED AS AMENDED.