788 So.2d 1 (2000)
STATE of Louisiana
v.
Jonathan MARTIN.
No. 98-KA-1507.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 2000.
Order Correcting and Amending Original Opinion November 15, 2000.
*4 Christopher A. Aberle, Louisiana Appellate Project, Mandeville, Louisiana, Attorney for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY, III).
McKAY, Judge.

STATEMENT OF THE CASE
The defendant Jonathan Martin was charged by grand jury indictment on April 18, 1996, with two counts of attempted first degree murder of a police officer, violations of La. R.S. 14:27(30(2)), and one count of possession of cocaine in the amount of twenty-eight grams or more, but less than two hundred grams, a violation of La. R.S. 40:967 F(a).[1] Preliminary hearing testimony was heard on May 28, 1996, and August 5, 1996. Following a three-day trial before a twelve-person jury, the defendant was found not guilty on June 25, 1997, as to the two counts of attempted first degree murder, and guilty as charged as to the count of possession of cocaine in the amount of twenty-eight grams or more, but less than two hundred grams. On July 18, 1997, the trial court denied the defendant's motions for post verdict judgment of acquittal and for new trial, and sentenced the defendant to fifteen years at hard labor, without benefit of probation, parole, or suspension of sentence. That date, the trial court denied the defendant's motion for reconsideration of sentence and granted the defendant's motion for appeal.
The record was lodged with this court on June 18, 1998. The defendant filed his brief on August 3, 1998. As of the date this recommendation was prepared, the State had not filed a brief.

FACTS
Louisiana State Trooper John Fitzpatrick testified that on November 29, 1995, he was working as a New Orleans Police detective, in the narcotics section, and, along with other officers, was awaiting a drug delivery at the corner of North Broad Street and Esplanade Avenue. When the suspect vehicle, a dark-colored Ford Taurus, arrived, Detective Fitzpatrick drove up behind the suspect, exited his unit, and ordered the three occupants out of the vehicle. The driver drove forward, striking another police unit, and turned into the parking lot driveway of a K & B drugstore on that corner. Detective Fitzpatrick ran around the corner to the other end of the driveway, positioned himself, and held out his badge. After the suspect vehicle rounded the corner of the parking lot, it kept moving forward toward Detective Fitzpatrick, and he fired twelve shots at the driver. The suspect vehicle then drove away with other officers in pursuit. Detective Fitzpatrick later learned that he had wounded the driver in the head.
New Orleans Police Detective Gabriel Favaroth was an undercover officer involved in the same investigation as Detective Fitzpatrick. He said when the Taurus *5 pulled up, the defendant rolled down the passenger window. When Detective Favaroth approached the vehicle, the defendant showed him contraband in his hand. When the suspect vehicle took off down the driveway, Detective Favaroth ran with Detective Fitzpatrick around the corner to the other end. He said he saw the defendant partially out of the window firing a blue steel revolver at them. Detective Favaroth fired several shots at the defendant.
Lloyd Bridgewater testified that on November 29, 1995, at around 7:00 p.m., he and his wife were traveling in the left-hand northbound lane of North Broad Street, when he stopped his pickup truck for a stoplight at Esplanade Avenue. He heard shots, and then his truck was struck by a dark-colored car that was being fired on by the police. The vehicle knocked the rear end of his truck around, and went through the intersection.
New Orleans Police Detective Yvonne Farve testified that police had set up a narcotics buy from someone nicknamed "Little Joe." She observed Detective Favaroth approach the suspect vehicle, and saw someone inside roll down the passenger window. She approached the vehicle and saw "Little Joe," who she identified as the defendant, in the passenger seat. When the vehicle suddenly took off, Detective Farve followed it down the driveway and saw what appeared to be muzzle flashes of a gun being fired from the front passenger side of the vehicle. She ran through the parking lot to Broad Street and saw the vehicle strike Mr. Bridgewater's pickup truck and proceed down Broad Street in a northbound direction. Detective Farve went to D'Abadie and North Broad Streets where the suspect vehicle had crashed into a residence.
New Orleans Police Detective Warren Keller Jr. testified that he received information from a confidential informant that a subject known by the nickname of "Little Joe" was distributing retail and wholesale quantities of crack cocaine and marijuana. Detective Keller, in a vehicle with Detective Fitzpatrick and Detective Paul Toye, attempted to block in the suspect vehicle on Esplanade Avenue, but it eluded the snare. Detective Keller then drove to North Broad and Esplanade and got out of his car. When the suspect vehicle pushed past Mr. Bridgewater's truck in his direction, he fired one shot at it. Detective Keller subsequently went down North Broad Street to the scene of the crash, and pursued Derrick Holmes, who had been the driver of the vehicle.
New Orleans Police Detective Terry Wilson testified that he was across North Broad Street from the scene of the aborted drug delivery, and moved his unit to Esplanade Avenue in a futile attempt to prevent the suspect vehicle from escaping. He chased the vehicle up North Broad to D'Abadie Street, where the driver crashed into a building. He and Detective Harrison chased the defendant as he ran from the car. During the chase, Detective Wilson twice saw the defendant drop or discard something. After apprehending the defendant, Detective Wilson and his drug-detecting dog recovered a package of narcotics at each of these two locations.
Later, Detective Wilson, after being directed to a Verbena Street residence by the defendant's mother, searched, with the consent of the owner, the residence. During the search, Detective Wilson's dog alerted to two thousand one hundred eighty dollars inside of a bedroom dresser, a pistol, a scale, and drug paraphernalia, all inside of a closet, and two bags of crack cocaine underneath a refrigerator.
On cross-examination, in response to a question by defense counsel Detective Wilson referred to "the subject's house on Verbena Street." Defense counsel asked *6 the officer whether there was any evidence that the defendant lived in the residence, and he replied that there were male clothes there that were "supposed to be his." Detective Wilson also said that Detective Toye, Sergeant Bardy, and Lieutenant Bruce Adams were present during the search of the Verbena Street address, along with someone who was "supposed to be" the defendant's wife.
New Orleans Police Department crime lab technician Officer Teresia Lamb testified that the substances inside of the two plastic bags dropped or discarded by the defendant as he ran from Detective Wilson tested positive for cocaine. She stated that the combined net weight of the cocaine was 41.6 grams, the gross weight, 43.6 grams. Officer Lamb also testified that the substances in the bag seized from the Verbena Street address tested positive for cocaine, and that the net weight of the cocaine was 76.7 grams. She stated that twenty-eight grams equals one ounce. On cross-examination, Officer Lamb admitted that she did not test each rock of cocaine in the packages.
New Orleans Police Officer Byron Gerard Bush examined the police firearms involved in the shootings, as well as spent bullets and casings recovered in the investigation.
New Orleans Police Detective Paul Toye testified that police were supposed to purchase two ounces of crack cocaine. Detective Toye was part of the surveillance team, and his testimony essentially tracked that of the other officers insofar as the events transpiring outside the K & B drugstore that evening. Detective Toye also went to the scene on D'Abadie Street. He identified the two bags of cocaine found there. He said the suspect vehicle was connected to an address which he learned was the defendant's mother's residence, located at 3132 Orleans Avenue. At that residence the defendant's mother advised Detective Toye that the defendant had a room there but did not stay there. She gave her consent for officers to search the defendant's room, but no contraband was found there. Detective Toye, along with Sergeant Robert Bardy and Lieutenant Bruce Adams, then proceeded to 2749 Verbena Street, Apartment A, where, Detective Toye had reason to believe, the defendant's wife lived. Detective Toye stated that Kim Martin did reside at that address and he said she signed a consent to search form for a search of the apartment. A search by Detective Wilson and his dog uncovered the previously mentioned evidence. Detective Toye identified the crack cocaine recovered underneath the refrigerator, as well as the currency, pistol, scale and paraphernalia-a glass beaker.
New Orleans Police Detective Michael Harrison testified that the seller was supposed to deliver two ounces of cocaine to North Broad and Esplanade Avenue. He said when the suspect dark-colored Ford Taurus pulled up with the window rolled down, he saw the defendant in the passenger seat. His testimony essentially tracked that of the other officers insofar as the events transpiring outside the K & B drugstore that evening. He participated in the chase of the suspect vehicle down North Broad Street. He and Detective Wilson chased the defendant, and he saw the defendant stumble to the ground twice, the second time as he was running next to a parked vehicle. Detective Harrison noticed the defendant place an object underneath the parked vehicle. With the aid of Detective Wilson and his dog, police retrieved the two bags of cocaine, which Detective Harrison identified at trial. Detective Harrison testified that he and other officers went to the defendant's mother's residence. He said she directed them to *7 the defendant's home on Verbena Street. Detective Harrison identified cocaine he observed in the Verbena Street apartment, although he said it had already been recovered by the time he got there.
Crime Lab Technician Officer Teresia Lamb, was recalled as a witness by the defendant, and testified that she found no traces of cocaine on articles of clothing from Derrick Holmes, the driver of the dark-colored Ford Taurus. She said it was possible to detect narcotics residue on clothing, depending on the amount of such residue. Officer Lamb could not recall whether she had been asked to test any articles of clothing belonging to the defendant.

ERRORS PATENT
A review of the record reveals three errors patent.
The minute entries and docket master fail to show that defendant was ever arraigned. "The arraignment consists of the reading of the indictment to the defendant by the clerk in open court, and the court calling upon the defendant to plead." La.C.Cr.P. art. 551 A. However, "[a] failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty." La.C.Cr.P. art. 555; State v. Scott, 97-0028, p. 6 (La.App. 4 Cir. 3/18/98), 709 So.2d 339, 342.
The record does not reflect that any objections regarding arraignment or pleas were made prior to trial. Therefore, any irregularity in failing to arraign the defendant was waived.
Second, the defendant was convicted of possession of cocaine in an amount of twenty-eight grams or more, but less than two hundred grams, a violation of La. R.S. 40:967 C. La. R.S. 40:967 F(1)(a) provides for a sentence upon conviction of imprisonment at hard labor for not less than ten years, nor more than sixty years, and a fine of not less than fifty thousand dollars, nor more than one hundred thousand dollars. A fine is mandatory, and the failure to impose a fine on a defendant sentenced under this provision is an error patent. State v. Collins, 584 So.2d 356, 359 (La.App. 4 Cir.1991). However, a sentencing error favorable to the defendant cannot be considered on appeal where it is not raised by the defendant or by the State. Id. at 360.
The third patent error concerns the trial court's stipulation that the defendant's sentence be served without benefit of probation, parole or suspension of sentence. La. R.S. 40:967 G provides that sentences imposed pursuant to subsection F, as in the instant case, shall not be suspended, "nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F." As the minimum sentence in this case under La. R.S. 40:967 F(1)(a) was ten years, the defendant's sentence should be amended to provide that it is without benefit of probation or parole for only ten years of the fifteen year sentence. See State v. Perez, 516 So.2d 199, 202 (La.App. 4 Cir.1987).

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant claims that the evidence was insufficient to support his conviction.
This court set out the standard for reviewing convictions for sufficiency of the evidence as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, *8 any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
State v. Ragas, 98-0011 pp. 13, 14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-7, quoting State v. Egana, 97-0318, pp. 5-6 (La. App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
The defendant was convicted of possession of cocaine in an amount twenty-eight grams or more, but less than two hundred grams, in violation of La. R.S. 40:967 F(a). To convict for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics. State v. Brady, 97-1095, pp. 7-8 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1268. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. Id. Two relevant factors to be considered in determining whether a defendant had constructive possession of drugs, i.e., exercised dominion and control over them, are the defendant's relationship with the person in actual possession, and the defendant's access to the area where the drugs were found. State v. Mitchell, 97-2774, pp. 11-12 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 327-8. "A person may be deemed to be in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control it." State v. Booth, 98-2065, p. 5-6 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, 741-42.
In the instant case, the defendant's conviction can be sustained by proof of either his possession of the 41.6 grams of cocaine he allegedly discarded fleeing from the scene of the crash, or his possession of the 76.7 grams of cocaine found at the Verbena Street address.
Detective Farve testified that police setup a narcotics buy from the defendant, *9 whom police knew as "Little Joe." She observed the defendant sitting in the passenger seat of a vehicle, which approached Detective Favaroth, and saw the vehicle suddenly, take off. Detective Favaroth testified that he saw the defendant in a Ford Taurus, and that the defendant showed him contraband in his hand, before the vehicle sped off. Detective Wilson testified that he chased the vehicle as it fled from the corner of N. Broad Street and Esplanade Avenue to the site where it crashed. Detective Wilson chased the defendant as he ran from the crashed vehicle, and observed him retrieve something from his jacket pocket and drop it as he stumbled. He subsequently observed the defendant trip onto a parked car and throw something underneath it. Detective Wilson said his drug-detecting dog subsequently recovered two plastic bags of drugs at each of these locations-alongside of a yellow residence, which he identified in a photograph, and underneath the car, which he also identified in a photograph. Drugs from each bag tested positive for cocaine. The total net weight of the cocaine was 41.6 grams. Detective Harrison testified that he chased the defendant with Detective Wilson. During the chase, he saw the defendant stumble twice, and appear to place something underneath a parked vehicle when he fell on one of those occasions. Detective Toye testified that the vehicle, which crashed, was registered to the defendant's mother. No drugs were recovered from the defendant's person when he was arrested.
The defendant attacks the credibility of the officers who testified. He notes that while Detective Favaroth testified that he saw the defendant in the passenger seat of the Taurus holding drugs, Detective Farve said that when she approached the vehicle Detective Favaroth was standing by the rear passenger door. The defendant questions how Detective Favaroth could have seen the drugs from this position. The defendant also questions why Detective Harrison did not see the defendant take anything from his pocket as he fled from the crash scene, while Detective Wilson did.
While defense counsel effectively cross-examined the officers, viewing all of the record evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the elements of possession of cocaine in an amount more than twenty-eight grams, but less than two hundred grams, present beyond a reasonable doubt, as to the 41.6 grams of cocaine recovered near the scene of the crash.
The only evidence presented to the jury from which they could have concluded that the defendant possessed the cocaine recovered from the Verbena Street residence was testimony by Detective Toye that the defendant's wife lived at that address, and his hearsay testimony that the defendant's mother informed him that the defendant did not live at her residence, although he had a bedroom there. Detective Toye also testified that a bedroom on Verbena Street, in which currency, a scale and drug paraphernalia were recovered, also contained men's clothing. The cocaine itself was recovered underneath the refrigerator, according to Detectives Toye and Wilson. Detective Wilson referred to the Verbena Street residence as "the subject's house," and said that someone who was "supposed to be" defendant's wife was at the residence during the search. Detective Wilson also testified that there were male clothes in the residence that were "supposed to be the defendant's."
There was no direct evidence that the defendant resided at the Verbena Street residence with his wife. There was no evidence presented such as utility bills or other mail addressed to the defendant at *10 the Verbena Street address, or any other item identified as belonging to him that had been recovered there. While it may be inferred that the defendant resided at the residence because his wife did, such an inference is not sufficient alone to support a conviction for possession of drugs found there.
Even considering that a finding by the jury that the defendant possessed the cocaine recovered near the crash scene might lend support to the inference that the defendant possessed the cocaine found at the Verbena Street residence, viewing all of the evidence in a light most favorable to the prosecution, it does not appear that any rational trier of fact could have found beyond a reasonable doubt that defendant possessed, i.e., exercised dominion and control over, that cocaine.
There is merit to part of this assignment of error insofar as the evidence appears to have been insufficient to have convicted defendant of the crime charged based upon the cocaine recovered from the Verbena Street residence. However, because defendant was only charged with and convicted of one count of possession of cocaine, the evidence concerning the cocaine seized near the scene of the car crash was sufficient alone to sustain the defendant's conviction.

PRO SE ASSIGNMENT OF ERROR NO. 2
By this assignment of error, the defendant claims that the trial court erred in denying his motion for a new trial and motion for post verdict judgment of acquittal.
La.C.Cr.P. art. 851 authorizes a trial court to grant a new trial. A motion for a new trial shall be in writing. La.C.Cr.P. art. 852. Unless the motion for new trial is based on the ground of the discovery of new and material evidence, it shall be filed and disposed of before sentence. La. C.Cr.P. art. 853. In the instant case, the defendant's written motion for new trial was filed on December 18, 1997. The defendant was sentenced on July 18, 1997. While counsel did file an oral motion for new trial which was denied by the trial court at the sentencing hearing, his written motion was not filed timely. Accordingly, this assignment of error presents nothing for review. See State v. Ballom, 96-1443, p. 2 (La.App. 4 Cir. 7/3/96), 678 So.2d 53, 54-55. Moreover, the defendant's sole argument for granting a new trial, made at the sentencing hearing, was that he was prejudiced by the trial court's admitting into evidence the cocaine seized from the Verbena Street residence. Defense counsel argued that this tainted evidence caused the jury to convict the defendant, whereas if it had not been admitted, the jury might have acquitted the defendant or found him guilty of a lesser charge as to the other cocaine. The defense counsel argued that such evidence had not been linked to the defendant, i.e., that it was not relevant. This issue was addressed in the defense counsel's sole assignment of error, where it was concluded that the evidence was properly admitted by the trial court. Accordingly, the trial court properly denied the defendant's motion for new trial based on this argument.
The defendant next argues that the trial court erred in denying his motion for post verdict judgment of acquittal. "A post verdict judgment verdict of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La.C.Cr.P. art. 821(B). A motion for post verdict judgment of acquittal raises the question of sufficiency of the evidence. See State v. Thibodeaux, 98-1673, p. 12 (La.9/8/99), 750 So.2d 916, 926. This issue has already been addressed and resolved.
*11 There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, the defendant claims that the trial court erred in not declaring a mistrial because of the State's alleged repeated references to hearsay testimony.
The only ground for mistrial based on the prosecution's repeated references to hearsay testimony are found in La.C.Cr.P. art. 775, which provides in pertinent part that "upon motion of a defendant, ... a mistrial shall be ordered, ..., when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial ...." In the instant case, the defendant cites several instances of such alleged conduct by prosecutors. However, in no such instance did the defense counsel move for a mistrial. Instead, counsel simply objected. Therefore, the trial court did not err in failing to declare a mistrial where the defendant did not move for one.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 4
By this assignment of error, the defendant claims that the trial court erred in instructing the jury.
This assignment concerns the additional instructions given to the jury after it requested clarification of the definition of "attempted possession." While the record does not contain a transcript of the original instructions to the jury, it does contain a transcript of the additional instructions. The defendant cites as error the trial court's failure to instruct the jury as requested as to attempted simple possession. The trial court instead instructed the jury on simple possession. However, the transcript does not reflect that the defendant lodged a contemporaneous objection to the giving of this instruction, or the failure to give an instruction.
"A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." La.C.Cr.P. art. 801. Because the defense counsel did not object to the failure to give the instruction on attempted simple possession as required by the statute, the defendant waived any claim based on this alleged deficiency. State v. Howard, 98-0064, P. 14 (La.4/23/99), 751 So.2d 783, 801, cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999).
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 5
By this assignment of error, the defendant claims his sentence is constitutionally excessive.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.4/8/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97 1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds; State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it makes no measurable *12 contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Burton, 98-0096, pp. 6-7 (La.App. 4 Cir. 9/1/99), 746 So.2d 74-79. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2984 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
"Intertwined with [a] review of a sentence for excessiveness is [the] review of the record to ensure that the trial court complied adequately with La.C.Cr.P. art. 894.1 and accorded proper weight to all relevant sentencing factors." State v. Smith, 433 So.2d 688, 698 (La.1983), citing State v. Tompkins, 429 So.2d 1385 (La. 1982). This court has previously addressed the mandatory requirements of La.C.Cr.P. art. 894.1 as an integral part of the constitutionally excessive sentence analysis. See State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14; State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647.
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.Code Crim. Proc. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983). The trial judge has wide discretion in sentencing, and a sentence should not be set aside absent manifest abuse of that discretion. State v. Sweeney, 443 So.2d 522 (La.1983).
Anderson, 97-2587 at pp. 10-11, 728 So.2d at 20-21.
In Major, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. *13 art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." State v. Wimberly, 414 So.2d 666, 672 (La.1982).
Id.; cited by this court in State v. Stark, 98-0668, p. 9 (La.App. 4 Cir. 5/26/99), 736 So.2d 331, 336.
The defendant was convicted of possession of cocaine in an amount of twenty-eight grams or more, but less than two hundred grams, a violation of La. R.S. 40:967 C. La. R.S. 40:967 F(a) provides for a sentence upon conviction for that offense of imprisonment at hard labor for not less than ten years, nor more than sixty years, and a fine of not less than fifty thousand dollars, nor more than one hundred thousand dollars. The trial court sentenced defendant to fifteen years at hard labor.
The defendant claims the trial court did not "adhere to" the requirements of La. C.Cr.P. art. 894.1. In sentencing the defendant, the trial court cited the defendant's two prior convictions from 1992, one for possession of marijuana and one for possession of cocaine. The trial court also noted a 1995 concealed weapon-related arrest, as well as another recent arrest for which the defendant was being prosecuted. Further, the trial court cited the serious circumstances of the arrest in the instant case-the shootout with police.
While the defendant was acquitted of the two counts of attempted first degree murder of a police officer, and the evidence indicates that he was not driving the vehicle that fled from police, the defendant was part of that crime scenario. The defendant's sentence was only five years more than the minimum sentence and forty-five years less than the maximum sentence. Even assuming the trial court did not adequately comply with La.C.Cr.P. art. 894.1, it cannot be said that there appears to be a substantial possibility that the defendant's complaints of an excessive sentence have any merit. Therefore, no remand for resentencing is necessary even if it is assumed that the trial court failed to adequately comply with the dictates of La. C.Cr.P. art. 894.1. Soraparu; supra.
The next inquiry is whether the sentence was disproportionate to sentences imposed by courts in similar circumstances.
In State v. Martinez, 560 So.2d 608 (La. App. 4 Cir.1990), this court upheld a twenty-eight year sentence imposed on a second-felony habitual offender (the original sentence was fourteen years) for possession of more than twenty-eight but less than two hundred grams of cocaine. The sentence range at that time for the offense was not less than five years nor more than thirty years at hard labor, and fifteen to sixty years under the Habitual Offender Law. The trial court considered the defendant's criminal history, particularly his prior conviction for possession of marijuana with intent to distribute and his five-year suspended sentence for that offense. The trial court felt that defendant's actions demonstrated a total disregard for the leniency shown him regarding that former conviction.
In State v. Perez, 516 So.2d 199 (La.App. 4 Cir.1987), this court upheld a ten-year sentence and two fifteen-year sentences *14 imposed, respectively, on three defendants, for possession of cocaine in an amount more than twenty-eight but less than two hundred grams. The sentence range at that time for the offense was not less than five years nor more than thirty years. The defendant who received fifteen years sped away from police in a vehicle when he came upon officers surveilling the defendants' residence, necessitating a chase. The trial court noted that all three had been arrested again for possession of a significant amount of cocaine while out on bond, and expressed concern that they had allowed five small children to remain in the residence within reach of cocaine.
Considering that the defendant was a party to an aborted sale of cocaine which resulted in two police officers discharging a total of twelve shots, and a car chase ending in a crash, along with the other factors noted herein, the sentence imposed on the defendant is not disproportionate to other sentences for this offense.
There is no merit to this assignment of error.
For the reasons set forth above the defendant's conviction is affirmed. Furthermore, the defendant's sentence is amended to provide that it be served without benefit of probation or parole only for the first ten years of his fifteen-year sentence.
AFFIRMED AS AMENDED.

APPENDIX A

ORDER
The Court, ex proprio motu, pursuant to appellant's motion to correct and amend the opinion in case No. 98-KA1507, hereby orders the following changes be implemented in the opinion dated April 5, 2000.

ASSIGNMENT OF ERROR 1
The defendant claims the trial court erred in admitting evidence of the seizure of the cocaine, paraphernalia and other contraband from the Verbena Street apartment, where the only connection between defendant and the apartment was established through hearsay testimony and prosecutorial argument.
Defendant's argument is that the State failed to present sufficient evidence to establish the relevance of the evidence seized at the Verbena Street apartment and, that even if it did, the minimal relevance of the evidence, due to the weak connexity to defendant, was substantially outweighed by the danger of unfair prejudice to defendant.
Defendant filed a motion in limine the morning of trial seeking to bar the State from introducing the evidence seized from the Verbena Street apartment, on the grounds that there was no evidence other than hearsay to link it to defendant. The trial court denied the motion.
All relevant evidence is admissible except as otherwise provided by the U.S. and Louisiana Constitutions, the Code of Evidence, or other legislation. La. C.E. art. 402. Evidence that is not relevant is not admissible. Id. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. "Although relevant, evidence maybe excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La. C.E. art. 403. A trial court's ruling as to relevancy should not be disturbed absent a clear abuse of discretion. State v. Pooler, 96 1794, p. 35 (La.App. 1 Cir. 5/9/97), 696 So.2d 22, 46, writ denied, 97-1470 (La.11/14/97), 703 So.2d 1288; State v. Timon, 28,747, p. 23 (La.App. 2 *15 Cir. 10/30/96), 683 So.2d 315, 329-330, writ denied, 96-2880 (La.4/25/97), 692 So.2d 1081.
Defendant was charged with possession of cocaine in the amount of twenty-eight grams or more, but less than two hundred grams. To convict for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics. State v. Brady, 97-1095, pp. 7-8 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1268. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. State v. Allen, 96-0138, pp. 4-5 (La.App. 4 Cir. 12/27/96), 686 So.2d 1017, 1020. Three factors to be considered in determining whether a defendant had constructive possession of drugs, i.e., exercised dominion and control over them, are: (1) the defendant's knowledge that the illegal drugs were in the area; (2) the defendant's relationship with the person in actual possession; (3) the defendant's access to the area where the drugs were found. State v. Mitchell, 97-2774, pp. 11-12 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 328. Thus, evidence that defendant's wife had cocaine at her residence would provide a basis for an inference that defendant exercised dominion and control over that cocaine and would be relevant. Evidence that defendant lived in the residence would considerably strengthen the relevance of that evidence.
La. C.E. art.. 104(A) provides that "[p]reliminary questions concerning the ... admissibility of evidence shall be determined by the court, subject to the provisions of Paragraph B. In making its determination it is not bound by the rules of evidence except those with respect to privileges." This second sentence of La. C.E. art. 104(A) means that a trial court can consider hearsay evidence when ruling on a preliminary question of whether or not evidence is relevant. See Official Comments (1988), comment (d), and 1999 Authors' Notes, note (3). See also State v. Scales, 93-2003, p. 3 (La.5/22/95), 655 So.2d 1326, 1330, cert. denied, Scales v. Louisiana, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996)(under La. C.E. art. 104(A), trial court can consider hearsay in a Prieur hearing to determine the admissibility of other crimes evidence); State v. Magouirk, 561 So.2d 801, 805-806 (La. App. 2 Cir.1990)(under La. C.E. art. 104(A), trial court can consider hearsay to determine whether a witness was threatened, thereby making his former testimony admissible as evidence).
At the motion in limine, during argument by defense counsel and prosecutors, there was reference to defendant's mother directing officers to defendant's wife's apartment on Verbena Street, and to Kim Martin, defendant's wife, admitting to police that she was defendant's wife after answering the door at the apartment. Therefore, considering that hearsay evidence, the trial court did not err in concluding that the evidence seized from the Verbena Street apartment was relevant and therefore admissible. Considering the hearsay evidence, the contraband seized from the apartment was highly probative, and such probative value was not substantially outweighed by any danger of prejudice, etc.
Defendant does not make an argument pertaining to La. C.E. art. 104(B), which provides that, where the relevancy of evidence depends upon the fulfillment of a condition of fact, a trial court shall admit such evidence "upon or subject to" the introduction of other evidence sufficient to support a finding of the fulfillment of the condition. As previously discussed, at the motion in limine, the trial court flatly denied defendant's motion to bar the introduction *16 of the evidence seized at the Verbena Street apartment. The court did not conditionally admit the evidence. Later, during the testimony of Det. Toye, the officer stated that he searched one room of defendant's mother's residence on Orleans Avenue, and obtained some objects that belonged to defendant. At that point, defendant objected to hearsay, arguing that Det. Toye only knew this fact from hearsay, and a discussion was held outside the presence of the jury. The court asked the State how it was going to get from the mother's residence to the Verbena Street apartment. The State argued that the officers could testify to statements by defendant's mother to explain why they went to Verbena Street, not for the truth of the matter asserted. More discussion was had in this area, and the trial court concluded by stating, "I hear you. You need to call mom to the stand."
This was at a point in the trial where there had already been testimony as to the evidence seized at the Verbena Street apartment by Det. Wilson, who, with his dog, found the evidence. Also, Crime Lab Technician Teresia Lamb had testified that the substance in the exhibit referenced by number to the Verbena Street seizure tested positive for cocaine, and weighed a certain amount. Nevertheless, even assuming that the statement by the trial court, that the State needed to call defendant's mother to the stand, was a ruling in accordance with La. C.E. art. 104(B), conditionally admitting the Verbena Street contraband, defendant did not follow up on this. If no connection was subsequently established by competent evidence, defense counsel should have: (1) moved the court to strike the evidence, (see McCormick on Evidence § 53 (4th ed.1992), note 11, and § 58;) (2) requested that the court instruct the jury to disregard the evidence, (see La. C.E. art. 104, 1999 Authors' Notes, note (2) and McCormick on Evidence (4th ed.1992) § 58;) or (3) moved for a mistrial, see La. C.E. art. 104, 1999 Authors' Notes, note (2). Defense counsel took none of these steps. McCormick makes it clear that the burden is on the objecting party to act where the proponent of the evidence fails to connect it to the charged crime. See McCormick on Evidence (4th ed.1992) § 58.
Defendant does not argue that the trial court erred in admitting hearsay evidence during trial. Defendant does not argue that the evidence was insufficient to support a conviction as to the cocaine seized from the Verbena Street apartment because the only connection established between that contraband and defendant was through hearsay evidence. Rather, defendant's assignment of error is that the trial court erred in admitting the contraband because it was either irrelevant, or because its probative value was substantially outweighed by the danger of unfair prejudice, etc.
Accordingly, there is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 1
By this assignment of error, the defendant claims that the evidence was insufficient to support his conviction.
This court set out the standard for reviewing convictions for sufficiency of the evidence as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 *17 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
State v. Ragas, 98-0011 pp. 13, 14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
The defendant was convicted of possession of cocaine in an amount twenty-eight grams or more, but less than two hundred grams, in violation of La. R.S. 40:967(F)(a). To convict for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics. State v. Brady, 97-1095, pp. 7-8 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1268. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. Id. Two relevant factors to be considered in determining whether a defendant had constructive possession of drugs, i.e., exercised dominion and control over them, are the defendant's relationship with the person in actual possession, and the defendant's access to the area where the drugs were found. State v. Mitchell, 97-2774, pp. 11-12 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 328. "A person may be deemed to be in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control it." State v. Booth, 98-2065, p. 5-6 (La. App. 4 Cir. 10/20/99), 745 So.2d 737, 741-42.
In the instant case, the defendant's conviction can be sustained by proof of either his possession of the 41.6 grams of cocaine he allegedly discarded fleeing from the scene of the crash, or his possession of the 76.7 grams of cocaine found at the Verbena Street address.
Detective Farve testified that police setup a narcotics buy from the defendant, whom police knew as "Little Joe." She observed the defendant sitting in the passenger seat of a vehicle, which approached Detective Favaroth, and saw the vehicle *18 suddenly, take off. Detective Favaroth testified that he saw the defendant in a Ford Taurus, and that the defendant showed him contraband in his hand, before the vehicle sped off. Detective Wilson testified that he chased the vehicle as it fled from the corner of N. Broad Street and Esplanade Avenue to the site where it crashed. Detective Wilson chased the defendant as he ran from the crashed vehicle, and observed him retrieve something from his jacket pocket and drop it as he stumbled. He subsequently observed the defendant trip onto a parked car and throw something underneath it. Detective Wilson said his drug-detecting dog subsequently recovered two plastic bags of drugs at each of these locationsalongside of a yellow residence, which he identified in a photograph, and underneath the car, which he also identified in a photograph. Drugs from each bag tested positive for cocaine. The total net weight of the cocaine was 41.6 grams. Detective Harrison testified that he chased the defendant with Detective Wilson. During the chase, he saw the defendant stumble twice, and appear to place something underneath a parked vehicle when he fell on one of those occasions. Detective Toye testified that the vehicle, which crashed, was registered to the defendant's mother. No drugs were recovered from the defendant's person when he was arrested.
The defendant attacks the credibility of the officers who testified. He notes that while Detective Favaroth testified that he saw the defendant in the passenger seat of the Taurus holding drugs, Detective Farve said that when she approached the vehicle Detective Favaroth was standing by the rear passenger door. The defendant questions how Detective Favaroth could have seen the drugs from this position. The defendant also questions why Detective Harrison did not see the defendant take anything from his pocket as he fled from the crash scene, while Detective Wilson did.
While defense counsel effectively cross-examined the officers, viewing all of the record evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the elements of possession of cocaine in an amount more than twenty-eight grams, but less than two hundred grams, present beyond a reasonable doubt, as to the 41.6 grams of cocaine recovered near the scene of the crash.
The only evidence presented to the jury from which they could have concluded that the defendant possessed the cocaine recovered from the Verbena Street residence was testimony by Detective Toye that the defendant's wife lived at that address, and his hearsay testimony that the defendant's mother informed him that the defendant did not live at her residence, although he had a bedroom there. Detective Toye also testified that a bedroom on Verbena Street, in which currency, a scale and drug paraphernalia were recovered, also contained men's clothing. The cocaine itself was recovered underneath the refrigerator, according to Detectives Toye and Wilson. Detective Wilson referred to the Verbena Street residence as "the subject's house," and said that someone who was "supposed to be" defendant's wife was at the residence during the search. Detective Wilson also testified that there were male clothes in the residence that were "supposed to be the defendant's."
There was no direct evidence that the defendant resided at the Verbena Street residence with his wife. There was no evidence presented such as utility bills or other mail addressed to the defendant at the Verbena Street address, or any other item identified as belonging to him that had been recovered there. While it may *19 be inferred that the defendant resided at the residence because his wife did, such an inference is not sufficient alone to support a conviction for possession of drugs found there.
Even considering that a finding by the jury that the defendant possessed the cocaine recovered near the crash scene might lend support to the inference that the defendant possessed the cocaine found at the Verbena Street residence, viewing all of the evidence in a light most favorable to the prosecution, it does not appear that any rational trier of fact could have found beyond a reasonable doubt that defendant possessed, i.e., exercised dominion and control over, that cocaine.
There is merit to part of this assignment of error insofar as the evidence appears to have been insufficient to have convicted defendant of the crime charged based upon the cocaine recovered from the Verbena Street residence. However, because defendant was only charged with and convicted of one count of possession of cocaine, the evidence concerning the cocaine seized near the scene of the car crash was sufficient alone to sustain the defendant's conviction.

PRO SE ASSIGNMENT OF ERROR NO. 2
By this assignment of error, the defendant claims that the trial court erred in denying his motion for a new trial and motion for post verdict judgment of acquittal.
La.C.Cr.P. art. 851 authorizes a trial court to grant a new trial. A motion for a new trial shall be in writing. La.C.Cr.P. art. 852. Unless the motion for new trial is based on the ground of the discovery of new and material evidence, it shall be filed and disposed of before sentence. La. C.Cr.P. art. 853. In the instant case, the defendant's written motion for new trial was filed on December 18, 1997. The defendant was sentenced on July 18, 1997. While counsel did file an oral motion for new trial which was denied by the trial court at the sentencing hearing, his written motion was not filed timely. Accordingly, this assignment of error presents nothing for review. See State v. Ballom, 96-1443, p. 2 (La.App. 4 Cir. 7/3/96), 678 So.2d 53, 54-55. Moreover, the defendant's sole argument for granting a new trial, made at the sentencing hearing, was that he was prejudiced by the trial court's admitting into evidence the cocaine seized from the Verbena Street residence. Defense counsel argued that this tainted evidence caused the jury to convict the defendant, whereas if it had not been admitted, the jury might have acquitted the defendant or found him guilty of a lesser charge as to the other cocaine. The defense counsel argued that such evidence had not been linked to the defendant, i.e., that it was not relevant. This issue was addressed in the defense counsel's sole assignment of error, where it was concluded that the evidence was properly admitted by the trial court. Accordingly, the trial court properly denied the defendant's motion for new trial based on this argument.
The defendant next argues that the trial court erred in denying his motion for post verdict judgment of acquittal. "A post verdict judgment verdict of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La.C.Cr.P. art. 821(B). A motion for post verdict judgment of acquittal raises the question of sufficiency of the evidence. See State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916 rehearing denied (La.11/19/99). This issue has already been addressed and resolved.
*20 There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 3
By this assignment of error, the defendant claims that the trial court erred in not declaring a mistrial because of the State's alleged repeated references to hearsay testimony.
The only ground for mistrial based on the prosecution's repeated references to hearsay testimony are found in La.C.Cr.P. art. 775, which provides in pertinent part that "upon motion of a defendant, ... a mistrial shall be ordered, ..., when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial ...." In the instant case, the defendant cites several instances of such alleged conduct by prosecutors. However, in no such instance did the defense counsel move for a mistrial. Instead, counsel simply objected. Therefore, the trial court did not err in failing to declare a mistrial where the defendant did not move for one.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 4
By this assignment of error, the defendant claims that the trial court erred in instructing the jury.
This assignment concerns the additional instructions given to the jury after it requested clarification of the definition of "attempted possession." While the record does not contain a transcript of the original instructions to the jury, it does contain a transcript of the additional instructions. The defendant cites as error the trial court's failure to instruct the jury as requested as to attempted simple possession. The trial court instead instructed the jury on simple possession. However, the transcript does not reflect that the defendant lodged a contemporaneous objection to the giving of this instruction, or the failure to give an instruction.
"A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." La.C.Cr.P. art. 801. Because the defense counsel did not object to the failure to give the instruction on attempted simple possession as required by the statute, the defendant waived any claim based on this alleged deficiency. State v. Howard, 98-0064, (La.4/23/99), 751 So.2d 783, cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999).
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 5
By this assignment of error, the defendant claims his sentence is constitutionally excessive.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.4/8/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds; State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 *21 Cir.1987), writ denied, 516 So.2d 366 (La. 1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Burton, 98-0096, pp. 6-7 (La.App. 4 Cir. 9/1/99), 746 So.2d 74, 79. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
"Intertwined with [a] review of a sentence for excessiveness is [the] review of the record to ensure that the trial court complied adequately with La.C.Cr.P. art. 894.1 and accorded proper weight to all relevant sentencing factors." State v. Smith, 433 So.2d 688, 698 (La.1983), citing State v. Tompkins, 429 So.2d 1385 (La. 1982). This court has previously addressed the mandatory requirements of La.C.Cr.P. art. 894.1 as an integral part of the constitutionally excessive sentence analysis. See State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14; State v. Major, 96-1214 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, writ denied, 98-2171 (La.1/15/99), 735 So.2d 647.
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.Code Crim. Proc. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983). The trial judge has wide discretion in sentencing, and a sentence should not be set aside absent manifest abuse of that discretion. State v. Sweeney, 443 So.2d 522 (La.1983).
Anderson, 97-2587 at pp. 10-11, 728 So.2d at 20-21.
In Major, this court stated:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
96-1214 at p. 10, 708 So.2d at 819.
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the court stated:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'" State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the *22 range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes "punishment disproportionate to the offense." State v. Sepulvado, 367 So.2d 762, 767 (La.1979). In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentencing is appropriate only when "there appear[s] to be a substantial possibility that the defendant's complaints of an excessive sentence ha[ve] merit." State v. Wimberly, 414 So.2d 666, 672 (La. 1982).
Id; cited by this court in State v. Stark, 98-0668, p. 9 (La.App. 4 Cir. 5/26/99), 736 So.2d 331, 336.
The defendant was convicted of possession of cocaine in an amount of twenty-eight grams or more, but less than two hundred grams, a violation of La. R.S. 40:967(C). La. R.S. 40:967(F)(a) provides for a sentence upon conviction for that offense of imprisonment at hard labor for not less than ten years, nor more than sixty years, and a fine of not less than fifty thousand dollars, nor more than one hundred thousand dollars. The trial court sentenced defendant to fifteen years at hard labor.
The defendant claims the trial court did not "adhere to" the requirements of La. C.Cr.P. art. 894.1. In sentencing the defendant, the trial court cited the defendant's two prior convictions from 1992, one for possession of marijuana and one for possession of cocaine. The trial court also noted a 1995 concealed weapon-related arrest, as well as another recent arrest for which the defendant was being prosecuted. Further, the trial court cited the serious circumstances of the arrest in the instant casethe shootout with police.
While the defendant was acquitted of the two counts of attempted first degree murder of a police officer, and the evidence indicates that he was not driving the vehicle that fled from police, the defendant was part of that crime scenario. The defendant's sentence was only five years more than the minimum sentence and forty-five years less than the maximum sentence. Even assuming the trial court did not adequately comply with La.C.Cr.P. art. 894.1, it cannot be said that there appears to be a substantial possibility that the defendant's complaints of an excessive sentence have any merit. Therefore, no remand for resentencing is necessary even if it is assumed that the trial court failed to adequately comply with the dictates of La. C.Cr.P. art. 894.1. Soraparu; supra.
The next inquiry is whether the sentence was disproportionate to sentences imposed by courts in similar circumstances.
In State v. Martinez, 560 So.2d 608 (La. App. 4 Cir.1990), this court upheld a twenty-eight year sentence imposed on a second-felony habitual offender (the original sentence was fourteen years) for possession of more than twenty-eight but less than two hundred grams of cocaine. The sentence range at that time for the offense was not less than five years nor more than thirty years at hard labor, and fifteen to sixty years under the Habitual Offender Law. The trial court considered the defendant's criminal history, particularly his prior conviction for possession of marijuana with intent to distribute and his five-year suspended sentence for that offense. The trial court felt that defendant's actions demonstrated a total disregard for the leniency *23 shown him regarding that former conviction.
In State v. Perez, 516 So.2d 199 (La. App. 4 Cir.1987), this court upheld a ten-year sentence and two fifteen-year sentences imposed, respectively, on three defendants, for possession of cocaine in an amount more than twenty-eight but less than two hundred grams. The sentence range at that time for the offense was not less than five years nor more than thirty years. The defendant who received fifteen years sped away from police in a vehicle when he came upon officers surveilling the defendants' residence, necessitating a chase. The trial court noted that all three had been arrested again for possession of a significant amount of cocaine while out on bond, and expressed concern that they had allowed five small children to remain in the residence within reach of cocaine.
Considering that the defendant was a party to an aborted sale of cocaine which resulted in two police officers discharging a total of twelve shots, and a car chase ending in a crash, along with the other factors noted herein, the sentence imposed on the defendant is not disproportionate to other sentences for this offense.
There is no merit to this assignment of error.
For the reasons set forth above the defendant's conviction is affirmed. Furthermore, the defendant's sentence is amended to provide that it be served without benefit of probation or parole only for the first ten years of his fifteen-year sentence.
Furthermore, as the amendments do not change the substance nor the outcome of this appeal we order the clerk of this Court to attach these amendments to the original opinion as appendix "A".
New Orleans, Louisiana this 15th day of November, 2000.
/s/ James F. McKay III
 JUDGE JAMES F. McKAY III
/s/ Joan Bernard Armstrong
 JUDGE JOAN BERNARD ARMSTRONG
/s/ Miriam G. Waltzer
 JUDGE MIRIAM G. WALTZER
NOTES
[1] Derrick Holmes was charged along with defendant on all counts. On October 17, 1997, as to defendant Holmes, the State nolle prosequied the two counts of attempted first degree murder and amended the charge in count three to simple possession of cocaine. That same date, defendant Holmes pleaded guilty as charged to the amended indictment and, after waiving all delays, was sentenced to two years at hard labor, suspended, three years probation with special conditions.